concurring in part and dissenting in part:
I concur in the majority disposition, except in its treatment of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which I believe the majority misapplies. Doyle held that “it would be fundamentally unfair and a deprivation of due process” to allow a Mirandized defendant’s silence at the time of arrest to be used to impeach his exculpatory testimony proffered for the first time at his criminal trial. 426 U.S. at 618, 96 S.Ct. 2240. Our decision in United States v. Caruto, 532 F.3d 822 (9th Cir.2008), which correctly applied Doyle, should control the outcome in this case.
In United States v. Caruto, defendant Elide Caruto was stopped at the Calexico, California port of entry when Customs and Border Protection officers discovered cocaine hidden in the gas tank of her truck. 532 F.3d at 824. After Immigration and Customs Enforcement Special Agents read Caruto her Miranda rights, she signed a waiver and agreed to make a statement. Id. Five to seven minutes later, however, Caruto invoked her Miranda rights and interrogation stopped. Id.
At Caruto’s trial, Agent Matthew Kelley testified that defendant Caruto, during her interview, stated that she loaned the truck to unknown individuals in Mexicali three to four weeks before her arrest. Id. at 824. Agent Kelley further testified that Caruto stated that she got the truck back on the day of her arrest and that she was driving to Los Angeles when the border agents stopped her. Id. Agent Tim Ballard also testified that Caruto stated that unknown individuals told her to drive the truck to Los Angeles. Id. at 825. After making these statements to the agents, Caruto invoked her Miranda rights and the interrogation stopped.
Caruto’s testimony differed from that of the agents. She testified that the night before her arrest, a friend’s brother-in-law, Jose Jimenez, indicated that he wanted to buy the truck in Mexicali. Id. Jimenez had seen the truck when Caruto’s friend borrowed it for a short time three weeks earlier. Id.
Caruto further testified that she drove her truck to Mexicali the next day and showed it to Jimenez. Id. Jimenez told her he wanted to take the truck to a mechanic and asked to borrow it. Id. When Jimenez returned the truck to Caru-to later that afternoon, he told her that “he would pay her $1,000 for the truck right away and he would pay her the rest” if she drove it to Los Angeles. Id. Caruto did not accept Jimenez’s offer and drove the truck home toward Calexico, where she was stopped by the border agents. Id.
During closing argument in Caruto, the prosecutor focused on the discrepancies between the agents’ accounts of Caruto’s statements made after she waived her Miranda rights and before she invoked those rights, and Caruto’s account of the facts when she testified at trial. The prosecutor argued to the jury:
[Ljet’s look at what she said to Agent Kelley and Agent Ballard at the port of entry on the date of her arrest. What did she say about the truck? She said that she owned the truck for approximately one year and that she had given it away to unknown individuals — un *56 known individuals three weeks to a month prior to the date of her arrest, that she got it back that day, the day of her arrest, and was told by these unknown individuals to drive the truck to Los Angeles.... She didn’t say that it was Jose Jimenez who gave her the truck, and by the way, here’s his phone number because I just spoke to him a few hours ago.... She didn’t say I was selling the truck. No, what she said to agents Kelley and Ballard was that unknown individuals had given her — or had taken her truck three weeks to a month earlier and that she got it back that day and was told to drive it to Los Angeles.
Id. at 826 (emphasis added).
We reversed Caruto’s conviction on Doyle grounds. Id. at 828. We held that Doyle was violated because “Caruto could not fully explain why her post-arrest statement was not as detailed” as her trial testimony “without disclosing that she had invoked her Miranda rights.” Id. at 830. We explained that Caruto’s case was different from any other Doyle case that we had previously examined because, unlike the defendants in those cases, Caruto initially waived her Miranda rights, but then invoked them after giving the agents a brief statement. Id. at 828. Applying the principles of Doyle to such a situation for the first time, we explained that, in contrast to the defendants in Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), United States v. Ochoa-Sanchez, 676 F.2d 1283 (9th Cir. 1982), and United States v. Makhlouta, 790 F.2d 1400 (9th Cir.1986) — three cases relied upon by the majority[1] — “Caruto did not simply fail to answer a specific question. Rather, she specifically invoked her Miranda rights and stopped the interview altogether.” Caruto, 532 F.3d at 829. We further noted that, during closing argument, “the prosecution commented on [Ca-ruto’s] failure to explain further what happened. This is the type of penalty for exercising one’s Fifth Amendment rights that Doyle prohibits.” Id. (emphasis added). Because the prosecutor’s closing argument “invited the jury to draw meaning from silence,” we held that Caruto’s due process rights were violated. Id. at 831.
The facts of Caruto are remarkably similar to the facts presented here. Like defendant Caruto, Macias was stopped at the Calexico port of entry and was interviewed by Agent Ballard, the same agent who interviewed Caruto.[2] Macias initially signed a waiver of his Miranda rights and submitted to questioning, but then invoked his Miranda rights and stopped answering questions after about 20 minutes.
At trial, the agents in the instant case, including Agent Ballard, testified that Macias told them that, when he crossed the border into Mexico, his father was waiting with a car, a dune buggy and a trailer. But at his trial Macias testified his father did not have the dune buggy and trailer when he met Macias at the border. Instead, Macias told the jury that, after meeting at the border, Macias and his father drove to visit two female relatives and stopped at a taco stand. They then traveled to a race track, where Macias’s father got the buggy and trailer from three men that Macias had never met.
During closing argument, Macias’s prosecutor emphasized the differences between *57 the agents’ testimony about the statements Macias made to agents before he invoked his Miranda rights and Macias’s own testimony at trial. Moreover, just as in Caru-to, the prosecutor in Macias’s case focused on what Macias did not tell the agents when he was first interrogated:
Think about the answers that [Macias] did give the agents, what little he did tell the agents, and most importantly, ladies and gentleman, think about this: He knew at the time he was interviewed by agents that he was arrested for the transportation of narcotics. This was the very first time he’d been arrested. This was the first time he’d been placed in a cell. Think about what he didn’t tell the agents when he got to the interview room and talked to them. You heard him on the stand. You heard him under cross-examination.
He didn’t tell the agents look, we just went to the sand dunes, and my dad just bought me this trailer, or this dune buggy, from three unknown men I’ve never seen before in my life. Look, we just got this buggy 20 minutes ago. Look, I didn’t know anything about this. These men lent me this — these men lent us that trailer, and actually they’re going to pick it up from us later, so maybe you can get in contact with them when they come up and pick up the trailer later from our house....
* * *
He didn’t say any of that ladies and gentlemen. He didn’t say anything about where they had just gotten the dune buggy, where they had just gotten the trailer, nothing. Think about all of that. Think about his demeanor, and think about what he said and what he didn’t say, and how many holes his story has....
But it’s very important that you also think about not only what was said but how it was said, not only what was said but what wasn’t said, and in so doing you will determine the guilt or innocence of the defendants.
(Emphasis added).
There is no meaningful distinction between Caruto and this case.[3] In both cases, defendants Caruto and Macias initially waived their Miranda rights, but later invoked those rights after submitting to a brief period of interrogation. Both defendants then testified at trial and placed the blame for the drugs elsewhere. The trial testimony of defendant Caruto and defendant Macias differed from the trial testimony of the agents concerning the defendants’ Mirandized statements. In Caruto, we reasoned that these differences were attributable to the fact that Caruto did not have the opportunity to give a detailed pre-arrest statement because she invoked her Miranda rights after a brief period of interrogation. Contrary to the majority’s view, that same reasoning should apply to Macias’s virtually identical case. To hold otherwise would render meaningless Macias’s decision also to invoke his Miranda rights after a brief period of interrogation.
Moreover, the prosecutor’s closing argument in this case was just as improper as the closing in Caruto. In the case before us, the linchpin of the prosecutor’s argument was that Macias had not told the agents all the details of the story he testi *58 fied to at trial. The prosecutor repeatedly-encouraged the jury to think about what Macias did not say. The prosecutor even went as far as to say that the jury could “determine [Macias’s] guilt or innocence” by thinking “not only of what was said but what wasn’t said.” This unambiguous demand that the jury “draw meaning from silence” flagrantly violates both the letter and spirit of Doyle and is identical to the argument that we found unconstitutional in Caruto. Id. at 831.
Doyle establishes that a defendant who wishes to invoke his Miranda right to terminate a custodial interrogation may do so without fear that his silence will later be used against him. Carato is consistent with this principle; the majority’s decision in this case is not. Defendant Macias is entitled to a new trial free from blatant constitutional error. Accordingly, I dissent.

. The majority’s reliance on Charles, Ma-khlouta, and Ochoa-Sanchez is misplaced. These cases are distinguishable from Macias's case because, just as in Caruto, Macias invoked his Miranda rights during the interrogation, which then ceased. See Caruto, 532 F.3d at 828-830 (distinguishing Charles, Ma-khlouta, and Ochoa-Sanchez because they were “non-invocation case[s].”).

. Agent Kelley did not participate in this interview.

. The majority argues that Caruto is distinguishable because, here, the prosecutor focused on alleged inconsistencies between Macias's post-arrest statement and his trial testimony. This is a distinction without a difference. Although the prosecutor may have attacked alleged inconsistencies in Macias’s statements, the prosecutor did so by heavily focusing on what Macias "did not say.” The prosecutor was not, as the majority argues, just attacking Macias's prior inconsistencies, the prosecutor was also improperly attacking his silence.